The document below is hereby signed.

Signed: November 09, 2009.



_S. Martin Teel_
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re | ) |
| | ) [Case Nos. 00-2263 through |
| KAISER GROUP INTERNATIONAL, | ) 00-2301 (GMS) in the United |
| INC., _et al._, | ) States Bankruptcy Court for |
| | ) the District of Delaware] |
| Debtors. | ) (Chapter 11) |
| _____ | ) (Jointly Administered) |
| | ) |
| KAISER GROUP HOLDINGS, INC., | ) |
| _et al._, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Adversary Proceeding No. |
| | ) 08-10020 |
| SQUIRE SANDERS & DEMPSEY | ) |
| LLP, | ) For Publication in West's |
| | ) Bankruptcy Reporter |
| Defendant. | ) |

<u>MEMORANDUM DECISION</u>

The plaintiffs ("Plaintiffs") commenced this matter as a civil action for alleged attorney malpractice in the Superior Court of the District of Columbia, and the defendant Squire Sanders & Dempsey LLP ("Squire Sanders") removed the matter to this court. Squire Sanders has filed a motion (Docket Entry ("DE") No. 7) for a change of venue and inter-district transfer,

and Plaintiffs have filed a motion for remand or, in the
alternative, abstention (DE No. 23).[1]  In accordance with the
following analysis, an order will follow, denying Plainitiffs'
motion, and granting Squire Sanders' motion for a change of venue
to the United States Bankruptcy Court for the District of
Delaware.

I

FACTS

Plaintiff Kaiser Group International, Inc. ("Old Kaiser"), a
Delaware corporation, hired Squire Sanders to represent it in
corporate and litigation matters.  (DE No. 6, Compl. ¶ 10.)  Old
Kaiser subsequently filed a petition commencing its bankruptcy
case under chapter 11 of the Bankruptcy Code (11 U.S.C.) in the
United States Bankruptcy Court for the District of Delaware on
June 9, 2000,[2] and, as a debtor in possession under 11 U.S.C.

---

[1]  In relation to the motion for a change of venue,
Plaintiffs filed a response (DE No. 25), and Squire Sanders
replied (DE No. 29); in relation to the motion for remand, Squire
Sanders responded (DE No. 28), and Plaintiffs replied (DE No.
31).  Squire Sanders also filed "support documents" for
consideration with these motions. (DE No. 30.)


[2]  Kaiser Group International, Inc. is the debtor in the
bankruptcy case, whereas Kaiser Group Holdings, Inc. is a
corporation that was formed for the purpose of holding the
outstanding stock of the debtor.  (DE No. 6, Compl. ¶ 3.)  The
former will be referred to as "Old Kaiser," while the latter,
having emerged from the Old Kaiser reorganization, will be
referred to as "New Kaiser."
Both entities are plaintiffs in this malpractice suit, and
are referred to collectively, when applicable, as Kaiser.

2

§ 1101(1) exercising the powers of a trustee under 11 U.S.C. § 1107(a) sought and was authorized by that court to retain Squire Sanders as its legal counsel in its bankruptcy proceedings. (*Id.*, Compl. ¶ 18.)

Prior to that bankruptcy filing, ICT Spectrum Constructors, Inc. ("Spectrum") was merged into a subsidiary of Old Kaiser through a merger agreement. (*Id.*, Compl. ¶ 21.) Under the agreement, Spectrum shareholders would receive 8.519 shares of Old Kaiser stock for each stock they held in Spectrum. (*Id.*) A separate "fill-up" provision of the merger agreement provided that if Old Kaiser stock was trading for less than $5.36 per share on March 1, 2001, former-Spectrum shareholders would receive additional shares or cash in the amount the shares were below $5.36. (*Id.*, Compl. ¶ 22.) Squire Sanders was responsible for advising Old Kaiser concerning and negotiating this agreement. (*Id.*, Compl. ¶ 23.)

Approximately a year after this merger agreement, on March 24, 1999, a former Spectrum shareholder filed a class action lawsuit in federal court in Idaho, asserting a claim that Old Kaiser misrepresented its finances and omitted relevant information during the time of the merger agreement. (*Id.*, Compl. ¶ 24.) That claim and a claim for enforcement of the fill-up provision was asserted by way of a proof of claim (the "Spectrum Class Claim") in the bankruptcy case. Squire Sanders

3

represented to Old Kaiser's board and the Tennenbaum Plaintiffs[3]
that the Spectrum Class Claim was without merit and would not
result in any financial harm to Plaintiffs.  (*Id.*, Compl. ¶ 27.)

Squire Sanders was the principal drafter of the Second
Amended Plan of Reorganization in the bankruptcy case.  (*Id.*,
Compl. ¶ 28.)  The bankruptcy court approved the Second Amended
Plan on December 5, 2000, and New Kaiser emerged from bankruptcy
under that plan.  (*Id.*)  As of August 28, 2008, the bankruptcy
estate had been administered with the exception of "a single
claim objection and an unrelated [to the present malpractice
claims] matter on appeal."  (DE No. 25, p. 16) (citing the
Affidavit of Douglas W. McMinn, CEO of Kaiser Group Holdings,
Inc., Exhibit 2, pp. 1-2).

On July 3, 2008, Plaintiffs commenced this matter as a civil
action against Squire Sanders in the Superior Court of the
District of Columbia.  Squire Sanders removed the matter to this
court on July 31, 2008.  In their complaint, Plaintiffs allege
Squire Sanders committed professional negligence, and breached
its fiduciary duty in representing them in the bankruptcy case.
(DE No. 6, Compl. ¶¶ 66-73, 74-78.)  Plaintiffs' claims are based
primarily on the following alleged conduct:

---

[3]  The "Tennenbaum Plaintiffs" consist of Michael E.
Tennenbaum, individually; Michael E. and Suzanne S. Tennenbaum as
trustees for two Tennenbaum trusts, and Tennenbaum & Co., LLC.
These individuals and entities owned a significant portion of the
stock of Old Kaiser.  (*See* DE No. 6, Compl. ¶¶ 4-8.)

- Squire Sanders drafted and endorsed the Disclosure Statement and the Second Amended Plan of Reorganization in a manner that was not in compliance with Bankruptcy Code, failing to disclose potential risks posed by the Spectrum Class Claim and failing to provide a separate classification for that class (*Id.*, ¶¶ 29-42);

- Squire Sanders failed to adequately disclose and explain the risks to Plaintiffs inherent in the various legal positions Squire Sanders took regarding the Spectrum Class Claim (both in drafting the plan and in litigation in the bankruptcy court, and in appeals therefrom, concerning the interpretation of the confirmed plan's treatment of that claim) (*Id.*, ¶¶ 27, 31, 44, 51); and

- Squire Sanders needlessly increased legal fees through an aggressive protracted legal strategy (regarding the treatment of the Spectrum Class Claim), pursuing a position which was legally and factually inaccurate (*Id.*, ¶¶ 44, 48-59).

Based upon these claims, Plaintiffs seek damages, as follows:

- compensatory damages for the fees Plaintiffs paid to subsequent legal counsel to complete bankruptcy matters and related issues after Squire Sanders was terminated;

- restitution of all legal fees and costs paid to Squire

> Sanders for representing Plaintiffs in the bankruptcy proceedings and in connection with the Spectrum Class Claim;
>
> • compensatory damages to the Tennenbaum Plaintiffs as shareholders for the dilution of value of their shares due to the distribution of stock to the Spectrum Class; and
>
> • attorney's fees and costs.

(*Id.*, Compl. p. 26).

The issues pending here are Plaintiffs' motion for remand or abstention, and Squire Sanders' motion for a transfer of venue. (DE Nos. 7, 23). To address these motions, it must first be decided whether federal jurisdiction exists here.

## II

## JURISDICTION

For reasons discussed below, I conclude (in part A) that this proceeding, arising out of representation of a debtor in a case, generally fits within this court's "arising in" jurisdiction under 28 U.S.C. § 1334(b), and I conclude (in part B) that, in the circumstances of this case, this "arising in" jurisdiction even extends to the alleged malpractice that occurred pre-petition and that occurred post-confirmation.

A.

General Analysis

If jurisdiction exists here, it rests on the jurisdiction of the district court which by local rule under 28 U.S.C. § 157 has referred this proceeding to this court.  Squire Sanders asserts that the district court has jurisdiction via federal question jurisdiction, pursuant to 28 U.S.C. § 1331; and, bankruptcy jurisdiction, pursuant to 28 U.S.C. § 1334(b).  (DE No. 6, pp. 3-4.)

Section 1331 provides "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Section 1334(b) provides "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."  These statutes break down into three jurisdictional inquiries: whether this civil action (1) arises under title 11,[4] (2) arises in a case under title 11, or (3) is otherwise related to a case

---

[4]  Because the federal law in question here is bankruptcy law, the "arising under" inquiries for 28 U.S.C. § 1331 and § 1334(b) are identical.  *See Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006) ("Bankruptcy 'arising under' jurisdiction is analogous to 28 U.S.C. § 1331"); *In re Bergman*, 397 B.R. 348, 352-53 (Bankr. E.D. Va. 2008) ("To determine whether a civil proceeding 'arises under' the Bankruptcy Code, a court must apply the same test for deciding whether a civil action presents a federal question under 28 U.S.C. § 1331.")

under title 11.[5]  Because it is clear the district court has

"arising in" jurisdiction over Plaintiffs' claims, only that

inquiry need be addressed.  *See Geruschat v. Ernst Young LLP* (*In*

*re Seven Fields Dev. Corp.*) ("*Seven Fields*"), 505 F.3d 237, 260

(3d Cir. 2007) ("While courts may choose to rely on 'related to'

jurisdiction because it is the broadest category of federal

bankruptcy jurisdiction when examining their own jurisdiction, it

certainly is not incumbent upon them to do so, because, as

occurred here, a party may argue and a court may decide that a

proceeding falls within one of the narrower categories of

jurisdiction, such as "arising in" jurisdiction . . . .")

Claims "arising in" a case under title 11 "are limited to

administrative matters that arise only in bankruptcy cases and

have no existence outside of the bankruptcy proceedings."  *In re*

*U.S. Office Prods. Co. Sec. Litig.*, 313 B.R. 73, 79 (D.D.C.

2004).  These "administrative matters" include a bankruptcy

court's appointment, supervision, enforcement of appropriate

---

[5]  In conjunction with these classifications, courts have
also referred to 28 U.S.C. § 157(b), which provides that
"Bankruptcy judges may hear and determine all cases under title
11 and all *core proceedings* arising under title 11, or arising in
a case under title 11. . . ." (emphasis added).  *See, e.g., Binder*
*v. Price Waterhouse Co., LLP* (*In re Resorts Int'l, Inc.*), 372
F.3d 154, 162 (3d Cir. 2004); *In re Baltimore Em. Servs. II*,
2008 WL 4596619, *3 (Bankr. D. Md. October 15, 2008).  Thus,
"core" proceedings constitute cases under, arising under, or
arising in a case under title 11, whereas "non-core" proceedings
constitute cases that only relate to a case under title 11.  *See*
*id.*

standards of conduct, and approval of fees of professionals conducting themselves in a bankruptcy case. *See In re Akl*, 397 B.R. 546, 554 (Bankr. D.D.C. 2008) (citing *In re Southmark Corp.*, 163 F.3d 925, 931 (5th Cir. 1999), *cert. denied*, 527 U.S. 1004 (1999)); *see also*, *Seven Fields*, 505 F.3d at 260-61. Thus, claims based upon the conduct of court-appointed attorneys often fall within the "administrative matters" leading to "arising in" jurisdiction. *See, e.g., Capitol Hill Group v. Pillsbury Winthrop Shaw Pittman, LLP*, 569 F.3d 485, 489-90 (D.C. Cir. 2009), *aff'g* 2008 WL 2690731, *4 (D.D.C. July 2, 2008) ("arising in" jurisdiction existed where debtor's legal counsel had allegedly committed malpractice while representing debtor in non-bankruptcy proceedings before a municipal zoning board); *Grausz v. Englander*, 321 F.3d 467, 471-72 (4th Cir. 2003) (where legal malpractice claim was based upon alleged negligent failure to advise the plaintiff in the bankruptcy case); *In re A.H. Robins Co., Inc.*, 86 F.3d 364, 373 (4th Cir. 1996) (arising-in jurisdiction existed where attorney's fees to be paid in the bankruptcy were disputed); *D.A. Elia Constr. Corp. v. Damon & Morey, LLP*, 389 B.R. 314, 318 (W.D.N.Y. 2008) (holding there was "no doubt" that "arising in" jurisdiction existed where the claims were allegations of substandard legal service during a bankruptcy case).

Here, Plaintiffs allege that Squire Sanders, who represented their interests as counsel for the debtor, who was approved by the bankruptcy court to represent the debtor in the bankruptcy case, and who represented Plaintiffs' interests up to and after the confirmation of the reorganization plan in the bankruptcy case, (1) was negligent in drafting and endorsing a reorganization plan that was not in conformity with bankruptcy law; (2) was negligent in dealing with the Spectrum Class Claim under the reorganization plan, was negligent in its advice in drafting the plan that the Spectrum Class Claim was meritless and would not harm the interests of Kaiser shareholders, and was negligent during litigation in the bankruptcy proceedings regarding the interpretation of the confirmed plan's treatment of that claim (adhering to its erroneous pre-confirmation advice as to the effect of the plan on that claim, and adopting an aggressive protracted litigation strategy); and (3) was negligent in inadequately or failing utterly to inform Plaintiffs of the risks associated with the law firm's handling of and litigation involving the Spectrum Class Claim. (*See* DE No. 6, Compl. ¶¶ 27, 29, 30, 31, 44, 48-59).

None of these allegations can be separated from the context of the bankruptcy proceedings, or the bankruptcy court's administration of those proceedings. As the United States Court of Appeals for the D.C. Circuit recently held, "malpractice

10

claims against court-appointed professionals stemming from
services provided in the bankruptcy proceeding are inseparable
from the bankruptcy context, and constitute a proceeding 'arising
in' the bankruptcy.   Such claims therefore fall within the
bankruptcy jurisdiction of the federal courts." *Capitol Hill
Group,* 569 F.3d at 489-90 (citations and quotations omitted).[6]

Each of Plaintiffs' allegations target conduct which was
performed by court-appointed professionals and inseparable from
the bankruptcy context.  *See Capitol Hill Group*, 569 F.3d at 489-
90.  Plaintiffs allege Squire Sanders was negligent in drafting
and endorsing its reorganization plan, which they allege to be
contrary to bankruptcy law; the bankruptcy court confirmed that
reorganization plan and approved the related attorney's fees.
*See Southmark*, 163 F.3d at 931 ("A malpractice claim like the
present one inevitably involves the nature of the services
performed for the debtor's estate and the fees awarded under
superintendence of the bankruptcy court" and is inseparable from
the bankruptcy context.)  Plaintiffs also allege Squire Sanders
was negligent in dealing with the Spectrum Class Claim at every
stage—in advising Plaintiffs that the claim was meritless and

---

[6]  This holding conforms with the holdings in the Third
Circuit, *e.g., Fields*, 505 F.3d at 262-63; the Fourth Circuit,
*Grausz*, 321 F.3d at 471-472 (recognizing "arising in"
jurisdiction existed over a malpractice claim for negligent
advice in a bankruptcy case), and the Fifth Circuit, *Southmark*,
163 F.3d at 931.

could be avoided, in drafting the reorganization plan, and in
pursuing post-confirmation litigation in relation to that claim,
adhering to the advice it had given pre-confirmation.  Again, the
bankruptcy court confirmed the plan, approved the related
attorney's fees, and, for the post-confirmation litigation, did
not adopt Squire Sanders' arguments, but did not indicate those
arguments rose to a level of negligence, were frivolous, or
otherwise warranted sanctions.  This conduct arose in the
administration of the bankruptcy case.  *See In re Billing*, 150
B.R. 563, 566 (D.N.J. 1993) ("If Congress' intent to include in
the definition of core proceedings matters concerning the
administration of the estate is to be given any meaning at all,
it must be read to include claims that the bankruptcy was
negligently or intentionally mishandled."), *rev'd on other
grounds*, 22 F.3d 1242 (3d. Cir. 1994).  Finally, Plaintiffs
allege Squire Sanders failed utterly to warn them of the risks
involving the Spectrum Class Claim; not only did the bankruptcy
court approve the attorney's fees, but the issue here——the extent
to which an attorney need counsel his or her client regarding
risks inherent in strategies executed through a reorganization
plan and subsequent litigation stemming from it——is inseparable
from the bankruptcy context.  *See Grausz*, 321 F.3d at 471-72
("'[A]rising in' jurisdiction surely means that jurisdiction
exists over a malpractice claim against a lawyer for providing

12

negligent advice to a debtor in a bankruptcy case."); *accord In re Simmons*, 205 B.R. 834, 841 (Bankr. W.D. Tex. 1997).  All of the above conduct falls within a bankruptcy court's "arising in" jurisdiction.  *See Capitol Hill Group,* 569 F.3d at 489-90.

### B.

### Prepetition or Post-Petition Conduct

Plaintiffs argue that the conduct underlying their malpractice claims occurred wholly outside the bankruptcy proceedings——either prior to the filing of the bankruptcy petition or after the confirmation of the bankruptcy plan——and thus cannot invoke the court's "arising in" jurisdiction.  (DE No. 23, p. 22.)  Plaintiffs' attempt to temporally carve Squire Sanders' conduct out of the bankruptcy case is unworkably artificial and contrary to the law.

### 1.

### Prepetition Conduct

Because Squire Sanders drafted and negotiated the reorganization plan and disclosure statement prior to the bankruptcy filing, Plaintiffs label that conduct "pre-petition" and not a core bankruptcy matter.  (*Id.*)  This characterization ignores the nature of a bankruptcy case.  The purpose of Squire Sanders drafting a reorganization plan was to file it in a bankruptcy case.  That plan cannot be neatly extracted from the

13

bankruptcy proceedings, especially here where Squire Sanders,
acting as Plaintiffs' court-appointed bankruptcy counsel, made
representations about and modifications of the reorganization
plan in proceedings before the bankruptcy court. (*See* Judgment
confirming the Debtor's Second Amended Plan of Reorganization, DE
No. 30, Exhibit 3, p. 1) ("The Initial Plan, as amended by the
Amendments plus those modifications made in open Court . . . .").
The bankruptcy court then approved the reorganization plan
(drafted by Squire Sanders), a plan which Plaintiffs allege was
contrary to law.  The confirmation of the reorganization plan,
and the plan itself, is at the core of a bankruptcy court's
jurisdiction.  *See* 28 U.S.C. § 157(b)(2)(L).  The conduct of a
court-appointed attorney in securing that confirmation is also
core, as it goes to the integrity of the bankruptcy process and
is inseparable from that process.  *See Capitol Hill Group,* 569
F.3d at 489-90; *Seven Fields*, 505 F.3d at 260 (citing *Binder v.
Price Waterhouse Co., LLP* (*In re Resorts Int'l, Inc.*)
("*Resorts*"), 372 F.3d 154, 163 (3d Cir. 2004)); *Southmark*, 163
F.3d at 931.  Pre-petition advice, when addressing the impending
bankruptcy, falls within "arising in" jurisdiction, because it is
inseparable from the bankruptcy and would not occur but for it.
*See In re Simmons*, 205 B.R. at 841 (where pre-petition advice
dealt with the bankruptcy, "those claims of malpractice which
originated out of pre- and post-petition advise [sic] of counsel

14

concerning the *bankruptcy itself* are matters that fall within "arising in" jurisdiction.") (emphasis in original).  Squire Sanders' pre-petition conduct—the drafting of the reorganization plan—is a process that continues into the bankruptcy case, and cannot be separated from it, at the least where the drafter serves as legal counsel to endorse that plan to the bankruptcy court and ultimately secures its approval.

Even if I were willing to entertain Plaintiffs' notion that the pre-petition drafting of future bankruptcy filings could be carved out of the bankruptcy case for the purpose of a malpractice suit, the damages Plaintiffs seek are inconsistent with their argument that the malpractice falls outside the bankruptcy proceedings.  Plaintiffs seek restitution of "all legal fees and costs paid by Kaiser to Defendant, *arising from Defendant's representation of the Plaintiffs in the Bankruptcy proceedings*, and in connection with the Spectrum Class Claim . . . ." (DE No. 6, Compl. p. 26) (emphasis added).  Thus, Plaintiffs seek restitution of the fees awarded to Squire Sanders in the bankruptcy proceedings.  Such damages are part of the administrative matters "arising in" a case under title 11.  *See Southmark*, 163 F.3d at 931 ("Award of the professionals' fees and enforcement of the appropriate standards of conduct are inseparably related functions of bankruptcy courts.")  The Plaintiffs may not treat the prepetition services as beyond the

15

bankruptcy case, yet still seek to recover the compensation paid to counsel during the bankruptcy proceedings for those services.

This matter is distinguishable from the facts of the two decisions Plaintiffs cite in support of their overly broad claim that any conduct prior to the filing of the bankruptcy action cannot result in "arising in" jurisdiction. Both decisions involved pre-petition conduct that was independent of the bankruptcy filing, and only related to the bankruptcy so far as pursuit of the otherwise-independent malpractice might have provided funds in the bankruptcy case.

In *Browning v. Levy*, the pre-petition conduct was the drafting and endorsement of a non-bankruptcy settlement that occurred more than three years prior to the filing of bankruptcy. 283 F.3d 761, 767, 773 (6th Cir. 2002). The pre-petition conduct here was the drafting and negotiation of a reorganization plan and disclosure statement—which were being prepared expressly to file for bankruptcy purposes. (*See* DE No. 23, p. 22.)

*Diamond Mortgage Corp. v. Sugar* involved legal malpractice claims based upon the alleged failure to advise the clients of, or withdraw from representing the clients due to, a conflict of interest in matters prior to and independent of the clients' eventual filing of bankruptcy. 913 F.2d 1233, 1236 (7th Cir. 1990). Again, the malpractice allegations here arise from the preparation of the principal documents in a bankruptcy case.

16

(*See* DE No. 23, p. 22.)

As such, "arising in" jurisdiction encompasses Squire Sanders' drafting of the reorganization plan, regardless of whether it was drafted in part prior to filing of the bankruptcy petition.

2.

Post-Confirmation Conduct

Plaintiffs also argue that Squire Sanders' allegedly negligent handling of the Spectrum Class Claim was exclusively post-confirmation, and thus the bankruptcy court no longer has jurisdiction over the claims regarding such conduct.  (*See* DE No. 23, p. 22.)  Plaintiffs' argument mischaracterizes the facts and applicable law.

Squire Sanders' involvement with the Spectrum Class Claim occurred throughout, and as an inseparable part of, the bankruptcy proceedings.  Squire Sanders' first alleged negligence in relation to the Spectrum Class was in the drafting and finalizing of the Second Amended Plan of Reorganization.  (*See* DE No. 6, Compl. ¶ 29.)  The bases of this claim——negligent handling of a class (the Spectrum Class Claim) in the reorganization plan of a bankruptcy case, and negligent advice as to the effect of the plan on that class——are a fundamental part of the bankruptcy case and could not have occurred outside of the bankruptcy context.  *See In re Refco, Inc.*, 354 B.R. 515, 521 (B.A.P. 8th

17

Cir. 2006) ("The phrase 'arising in' generally refers to matters that, although not expressly created by title 11, would have no existence but for the fact that a bankruptcy case was filed.")

After the plan was confirmed, the Spectrum Class initiated litigation in the bankruptcy court on the Spectrum Class Claim, seeking to obtain a ruling interpreting the plan as requiring that their claims under the "fill-up" provision of the pre-bankruptcy merger agreement be treated in a way favorable to the Spectrum Class. (*Id.*, Compl. ¶ 48.) Plaintiffs continued to employ Squire Sanders in the post-confirmation litigation. Consistent with the allegedly negligent advice it had given in drafting and advocating confirmation of the reorganization case, Squire Sanders continued to advise that the Spectrum Class Claim was meritless and would not result in any material harm to the interests either of the Old Kaiser shareholders or the New Kaiser shareholders. (Compl. ¶ 27). Squire Sanders advised Plaintiffs to take an aggressive litigation approach and then argued in litigation that the plan should be interpreted to deal with the Spectrum Class in the way Squire Sanders originally intended in drafting the plan. (*Id.*, Compl. ¶¶ 44, 48-59.) Squire Sanders continued to abide by its pre-confirmation strategy regarding the effect of the plan with respect to the Spectrum Class Claim. (*See* DE No. 6, Compl. ¶ 58.) The bankruptcy court presided over the post-confirmation litigation, which involved determinations

18

based on bankruptcy law and interpretation of the reorganization plan[7]—a function falling squarely within the jurisdiction of the bankruptcy court.[8]

Plaintiffs' post-confirmation claims—involving the interpretation of the reorganization plan—"arise in" the context of bankruptcy proceedings because they concern alleged negligence that was an outgrowth of a court-appointed attorney's negligence leading to the confirmed plan, and they are mired in bankruptcy

---

[7]  Review of the January 20, 2004 hearing on this matter in the United States Bankruptcy Court for the District of Delaware makes it abundantly clear the interpretation of the reorganization plan was the very foundation of the Spectrum Class Claim litigation. (*See, e.g.,* DE No. 30, Exhibit 14, pp. 5-12; 17; 19; 20-23; 26; 31-32.)  In its closing, the Spectrum Class summarized the issue as follows: "Every word in the [reorganization] plan is Kaisers and that's what we're claiming under.  And that's what they're saying – they're trying to keep us [i.e. the Spectrum Class] from having our claim honored and recovering, pursuant to the specific provisions of their plan." (*Id.,* p. 35.)  Furthermore, in awarding damages to the Spectrum Class, the bankruptcy court referred to the operation of the reorganization plan.  (*Id.,* p. 37) ("[T]he plan requires the conversion of that claim at the 1 to 96 ratio, capped by the 17 percent provision.")

[8]  In addressing the Spectrum Class litigation, the bankruptcy court exercised its continued jurisdiction to interpret the plan post-confirmation.  *See In re Northwest Airlines Corp.*, 2008 WL 630449, *3 (Bankr. S.D.N.Y. March 5, 2008) ("A bankruptcy court not only retains post-confirmation jurisdiction to interpret and enforce its own orders, but the retention of jurisdiction by the bankruptcy court is particularly appropriate where, as here, the bankruptcy court expressly retains jurisdiction under the plan.") (citations omitted); Second Amended Plan of Reorganization, DE No. 7, Exhibit 4, Section 12.01(j), and p. A-1 (providing the home court will retain exclusive jurisdiction "to hear and determine disputes arising in connection with the interpretation, implementation, and enforcement of the Plan and any related documents.")

law, interpretation of the reorganization plan, and the
bankruptcy court's determinations in the bankruptcy proceeding.[9]
Where claims are unique to and inseparable from the bankruptcy
process, "arising in" jurisdiction exists.

In *Capitol Hill Group*, the debtor-appellant also raised the
argument that claims arising from post-confirmation conduct were
outside the "arising in" jurisdiction of the court.  569 F.3d at
489.  The Court of Appeals rejected this bright-line
characterization of the law, and instead focused on whether, as
in *Southmark*, the case involved a malpractice claim involving
court-appointed professionals, and could exist outside of the
bankruptcy.  *Id.* (*citing Southmark*, 163 F.3d at 931).  As
discussed above, the post-confirmation conduct here was a
continuation of the alleged malpractice which occurred throughout
the bankruptcy proceeding by the court-appointed counsel, and
thus falls squarely within the "arising in" jurisdiction of the
court.

---

[9]  For instance, the bankruptcy court's rulings on the
Spectrum Class Claim significantly affected the plan's
distribution of shares, ultimately awarding the Spectrum Class
175,000 additional shares.  (*See* DE No. 6, Compl. ¶ 80.)
According to Plaintiffs' allegations, at most, Squire Sanders'
negligent conduct caused or failed to prevent the bankruptcy
court from making an erroneous ruling; at the least, Squire
Sanders failed to warn Plaintiffs of risks that would have
altered Plaintiffs' actions in the case, and thus again would
have affected the operation of the bankruptcy proceeding.  Such
conduct implicates the "integrity of the entire bankruptcy
process" and is inseparable from it.  *Seven Fields*, 505 F.3d at
260-61; *see Capitol Hill Group*, 569 F.3d at 489-90.

If anything, this is a stronger case than *Capitol Hill Group* for finding "arising in" jurisdiction as to post-confirmation work. The post-confirmation work in *Capitol Hill Group* occurred in litigation before the zoning board and entailed non-bankruptcy law issues, and "arising in" jurisdiction existed based only on the continuum of the professionals' alleged negligent representation in the zoning board matter from prior to confirmation of the plan and after confirmation of the plan. Here, the allegations of malpractice grow entirely out of the bankruptcy case, entailing alleged malpractice pre-plan-confirmation regarding Squire Sanders' treatment under the plan of the Spectrum Class Claim and the risks posed by that claim, and a continuation of such malpractice after confirmation in the litigation in the bankruptcy court[10] concerning the treatment of the Spectrum Class Claim under the confirmed plan.

The bankruptcy court's appointment of counsel and review of fees creates a supervisory relationship between court and counsel that renders malpractice claims stemming from services provided in the bankruptcy proceeding inseparable from the bankruptcy

---

[10]   When conduct takes place in litigation before a bankruptcy court, that alone, however, is insufficient to confer subject matter jurisdiction on the bankruptcy court to hear a claim for damages based on such conduct. *See In re Akl*, 397 B.R. at 551-52 (bankruptcy court had no jurisdiction over claims against a creditor for abuse of process and malicious prosecution based on the creditor's having filed a meritless dischargeability complaint against the debtor in the bankruptcy court).

context.[11]   Normally, a bankruptcy court does not approve fees

for post-confirmation conduct nor has an active role in the

removal of post-confirmation counsel.   One could argue this lack

of a formal, continued supervisory relationship between court and

counsel would terminate "arising in" jurisdiction for post-

confirmation conduct.   That may be the case where the post-

confirmation conduct is separable from the pre-confirmation

conduct.   Here, however, the bankruptcy court fulfilled its

supervisory role over court-appointed counsel throughout the pre-

confirmation conduct, and counsel continued that conduct after

confirmation.   Any challenge to the post-confirmation conduct

would necessarily challenge the pre-confirmation conduct, thereby

requiring judgment on the bankruptcy court's policing of its

fiduciaries, an issue inseparable from the bankruptcy context.

*See Southmark*, 163 F.3d at 931; *cf. Capitol Hill Group*, 569 F.3d

at 489 (rejecting a bright-line prohibition against "arising in"

---

[11]   *See Southmark,* 163 F.3d at 931:

> A *sine qua non* in restructuring the debtor-creditor
> relationship is the court's ability to police the
> fiduciaries, whether trustees or debtors-in-possession
> and other court-appointed professionals, who are
> responsible for managing the debtor's estate in the best
> interest of creditors.  The bankruptcy court must be able
> to assure itself and the creditors who rely on the
> process that court-approved managers of the debtor's
> estate are performing their work, conscientiously and
> cost-effectively.   Bankruptcy Code provisions describe
> the basis for compensation, appointment and removal of
> court-appointed professionals, their conflict-of-interest
> standards, and the duties they must perform.

jurisdiction for post-confirmation conduct).[12]

A situation similar to *Capitol Hill Group* and this case arose in *Seven Fields*. 505 F.3d at 237. There, an accounting firm, whose fees were approved by the bankruptcy court, represented to the debtor, investors, and bankruptcy court that the debtor had a large debt and was insolvent. *Id.* At 261. As here, those representations were made "previously and throughout the bankruptcy" and "after the reorganization and bankruptcy," a continuing act of malpractice that occurred and was cultivated

---

[12] Plaintiffs cite *Binder v. Price Waterhouse Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d at 162, in an attempt to support their argument that this court lacks subject matter jurisdiction over all services rendered by Squire Sanders post-confirmation. (*See* DE No. 31, p. 18.) However, *Resorts* is not applicable here. That decision was based upon "related to" jurisdiction, not "arising in," jurisdiction. *See* 372 F.3d at 163. Although "related to" jurisdiction is considered the broadest of the jurisdictional inquiries under 28 U.S.C. § 1334(b), it does not encompass all the other categories. Whether "related to" jurisdiction exists does not determine whether "arising in" jurisdiction does. *See In re Simmons*, 205 B.R. 834, 841-43 (Bankr. W.D. Tex. 1997) (recognizing that "related to" jurisdiction does not encompass "arising under" and "arising in" jurisdiction, but rather § 1334(b) provides several standards by which bankruptcy jurisdiction may exist.)

In its "arising in" dicta, the *Resorts* court opined that "arising in" jurisdiction was not present because the post-confirmation, alleged malpractice, "erroneously reporting that certain accrued interest belonged to one entity rather than to another and committing other errors in auditing and tax advice," was conduct that could have occurred outside of the bankruptcy process and did not implicate the integrity of it. *See Resorts.* at 163. The conduct there was readily distinguishable from the pre- through post-confirmation conduct here, which involved a court-appointed professional providing services that were integral to the bankruptcy proceeding. *Cf. Binder*, 372 F.3d at 158.

pre- through post-confirmation. *See id.* at 241.   The Third
Circuit held that the alleged malpractice implicated the
integrity of the entire bankruptcy process and was inseparable
from it, thus falling within the "arising in" jurisdiction of the
court. *Id.* at 260-61.

As above, because Plaintiffs' claims are "malpractice claims
against court-appointed professionals stemming from services
provided in the bankruptcy proceeding," they fall within the
"arising in" jurisdiction of the bankruptcy court. *See Capitol
Hill Group*, 569 F.3d at 489-90.

3.

Tennenbaum Plaintiffs

In addition to the pre-petition and post-confirmation
arguments, Plaintiffs assert "the Tennenbaum Plaintiffs, as non-
parties to the bankruptcy proceedings, certainly do not give rise
to a core proceeding." (DE No. 23, p. 23.)   Plaintiffs cite no
case law for this proposition.   A claim which arises in a
bankruptcy case does so when the claim would have no practical
existence but for the bankruptcy case, regardless of the identity
of the party asserting the claim. *See Grausz*, 321 F.3d at 471-72
(regardless of whether the malpractice claim belonged to the
bankruptcy estate or debtor personally, the federal court
retained "arising in" jurisdiction because the underlying conduct
occurred in the bankruptcy and thus would have no practical

24

existence outside of it.); *In re Murphy*, 213 B.R. 813, 817
(Bankr. S.D. Miss. 1997) (holding nothing in the language of 28
U.S.C. § 1334(b) "indicates that 'arising in' jurisdiction is not
as available to third-parties as it was held to be available to
the trustee and the debtors.")  "Arising in" jurisdiction thus
extends to the claims as they relate to the Tennenbaum
plaintiffs.

Because Plaintiffs' claims are based upon conduct which is
inseparable from the bankruptcy case, federal "arising in"
jurisdiction exists pursuant to 28 U.S.C. § 1334(b).

III

REMAND

Since federal jurisdiction exists, the issue arises whether
Plaintiffs' motion to remand or Squire Sanders' motion for a
transfer of venue should be considered first, as granting either
motion would make consideration of the remaining motion
unnecessary.  In light of the facts here, Plaintiff's motion to
remand will be addressed first.  As an initial matter, 28 U.S.C.
§ 1452(b) provides "[t]he court *to which such claim or cause of
action is removed* may remand such claim or cause of action on any
equitable grounds."  (Emphasis added.)  The statute expressly
grants authority for this court, to which the case was removed,
to consider the remand issue.

The alternative to considering remand first——potentially

granting a transfer of venue to allow the United States
Bankruptcy Court for the District of Delaware to consider the
remand to the Superior Court of the District of Columbia——makes
no practical sense here.  There is no showing that the
considerations involved in remand are of such complexity here
that the court in which the bankruptcy was filed would have any
significant advantage over this one in considering the issue.[13]
Furthermore, considerable expenses and further delays in the
litigation would result were the case transferred, only to face a
potential remand to the Superior Court of the District of
Columbia.  *See Lone Star Indust., Inc. v. Liberty Mut. Ins.*, 131
B.R. 269, 273 (D. Del. 1991) ("[A]s a logical and practical
matter, the court should determine whether any bankruptcy court
should hear a proceeding before it determines which bankruptcy
court should hear it.  These principles dictate that the remand
motion be determined before the venue motion.")  In light of
these considerations, remand is more appropriately considered
first here.

---

[13]  It may be possible that transfer would be warranted
prior to consideration of remand, should the facts and
circumstances of a bankruptcy case be of sufficient complexity
such that the court in which the bankruptcy case was held would
be better suited to consider a remand motion.  *See In re Pluma,
Inc.*, 2000 WL 33673752, *2 (Bankr. M.D.N.C. September 15, 2000)
(where the federal court, to which the case was removed,
transferred the case to the court where the bankruptcy was held
because that court was in a better position to determine whether
abstention or remand was appropriate).  That is not the case
here.

A.

Mandatory Abstention

Plaintiffs argue mandatory abstain is appropriate here pursuant to 28 U.S.C. § 1334(c)(2).  However, § 1334(c)(2) applies only to matters which are only "related to a case under title 11," not those that arise in a case under title 11.  Since this matter involves "arising in" jurisdiction, § 1334(c)(2) is not applicable here.

B.

Equitable Remand

Plaintiffs argue their claims should be remanded to the Superior Court of the District of Columbia pursuant to 28 U.S.C. § 1452(b).  That section provides "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."  Courts often consider this simultaneously with permissive abstention under 28 U.S.C. § 1334, which reads: ". . . nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

When considering whether permissive remand or abstention is warranted, courts consider the following: "(1) the effect on the

efficient administration of the bankruptcy estate; (2) the extent
to which issues of state law predominate; (3) the difficulty or
unsettled nature of applicable state law; (4) comity; (5) the
degree of relatedness or remoteness to the proceeding in the main
bankruptcy court; (6) the existence of the right to a jury trial;
and (7) prejudice to the involuntarily removed defendants." *CHG*,
2008 WL 2690731 at *5 (citing *In re Merry-Go-Round Enters., Inc.*,
222 B.R. 254, 257 (D. Md. 1998)); *see also Drexel Burnham Lambert
Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y.
1991). These factors weigh here as follows:

First, adjudication of this matter is unlikely to have a
significant effect on the efficient administration of the
bankruptcy estate. The bankruptcy court has long-since confirmed
the reorganization plan and, according to Plaintiffs, nearly all
disputes in the bankruptcy case have been resolved. (DE No. 25,
p. 16.)[14]

Second, although state law serves as the basic framework for
Plaintiffs' claims, that is, professional negligence and breach
of fiduciary duty, these causes of action are based upon conduct
which occurred in anticipation of, during and for, and as a
result of the bankruptcy. The court hearing this matter will
have to make determinations of the duties and standards of care

---

[14]  To the extent this factor encompasses the forum's
expediency in holding a trial, *see Merry-Go-Round*, 222 B.R. at
257, that is addressed in the sixth factor.

for legal counsel conducting itself in a bankruptcy case.  *See In re SPI Communications & Marketing, Inc.*, 112 B.R. 507, 512 (Bankr. N.D.N.Y. 1990) (the court rejected abstention in the Trustee's claims against the attorneys because they involved "consideration of both substantive and procedural bankruptcy law. It defies logic that a court less acquainted with bankruptcy law will better address issues of alleged malpractice in a bankruptcy context than a bankruptcy court.")  These determinations will be informed by the relationship during the bankruptcy case between bankruptcy counsel and the bankruptcy court, which approved the appointment of counsel, supervised counsel, ultimately confirmed the reorganization plan put forth by counsel, and heard litigation initiated and argued by counsel concerning matters in or relating to the reorganization plan.  *See, e.g., Southmark*, 163 F.3d at 931; *D.A. Elia Constr. Corp.*, 389 B.R. at 318. Indeed, the previous decisions of the bankruptcy court could have an impact on the permissibility of Plaintiffs' claims.  *See Grausz*, 321 F.3d at 472-75 (finding that the bankruptcy court's previous resolution of a fee application proceeding precluded, via *res judicata*, a malpractice claim seeking to recover fees); *Capitol Hill Group,* 569 F.3d at 490-93 (based on *res judicata*, final fee award barred malpractice claims).

Third, Plaintiffs have not provided any indication that the applicable state law is unsettled or will be difficult to

29

interpret; conversely, the federal issues that arise here——even if the federal law is settled——include extensive analysis of the bankruptcy case and the required duties and standards of conduct therein.

Fourth, the District of Columbia has considerable interest in any case which deals with the standards of practice of attorneys licensed to practice in the district. However, a federal court also regulates the conduct of attorneys licensed to practice before it, and has an equally compelling interest in assuring those attorneys meet the professional standards required in the practice of law.

Fifth, the alleged malpractice happened either in anticipation of, during and as part of, or as an immediate result of a bankruptcy case. As observed by the District Court in *Capitol Hill Group*, where the subject of the malpractice claims is "inextricably linked to the bankruptcy proceeding," that nexus weighs heavily against remand or abstention. 2008 WL 2690731, at *6 (finding the claim's degree of relatedness to the bankruptcy case to be so substantial as to be dispositive of the court's rejection of remand and abstention).

Sixth, Plaintiffs seek a jury trial on their claims. The parties do not dispute that Plaintiffs have a right to a jury trial here. Plaintiffs' access to a jury trial in the Superior Court of the District of Columbia is procedurally

straightforward.  The path to a jury trial in or through federal
bankruptcy court is more complicated; however, it is still
available.  A jury trial can be conducted by either the
bankruptcy court or district court.  A bankruptcy court can hear
a jury trial when the parties consent and the bankruptcy court is
specially delegated the authority to do so from the district
court.  28 U.S.C. § 157(e).  Here, Plaintiffs foreclose such a
possibility by stating they would not consent to a jury trial
before a bankruptcy court.  (DE No. 23, p. 14.)  In such a
situation, the district court has the authority, by its own
motion or by motion of a party, to remove the reference to the
bankruptcy court in order for the district court to conduct a
jury trial.  28 U.S.C. § 157(d) (authorizing the withdrawal of
the reference to the bankruptcy court, in whole or in part, for
"cause shown"); *see, e.g., In re Healthcentral.com*, 504 F.3d 775,
786-88 (9th Cir. 2007) (demand for one's Seventh Amendment right
to a jury trial suffices to satisfy the "cause shown" under
§ 157(d)); *In re Hassan*, 376 B.R. 1, 12 (Bankr. D. Kan. 2007)
(accord); *Roberds, Inc. v. Palliser Furniture*, 291 B.R. 102, 104-
05 (S.D. Ohio 2003) (accord).  Although the procedural ease and,
presumably, speed in which Plaintiffs could procure a jury trial
in Superior Court weighs in favor of remand, Plaintiffs would not
be denied access to a jury trial in federal court.  This factor
thus weighs in favor of remand, but not to the extent overstated

31

by Plaintiffs, who inaccurately asserted "remand is required to preserve the right to a jury trial." (*See* DE No. 31, p. 7.) Plaintiffs cite numerous decisions where bankruptcy courts remanded cases to a state court based, predominantly or in part, upon the plaintiff's right to a jury trial. (DE Nos. 23, pp. 14-15; 31, pp. 7-11, 12). All of those decisions involved cases materially distinguishable from this one because factors in addition to one's access to a jury trial need to be considered.[15] Indeed, one of those decisions actually contains a discussion

---

[15]  *See Abbey v. Modern Africa One, LLC*, 305 B.R. 594, 597, 604 (D.D.C. 2004) (plaintiffs' non-core claims were based upon corporate law and issues of governance, whereas here, the issues are grounded in the bankruptcy case and the requirements of bankruptcy law); *In re Jones*, 80 B.R. 597, 599 (Bankr. D.D.C. 1988) (other factors weighed heavily in favor of remand:  the interest of comity was "especially strong" where the case was based upon the validity of a judgment of the Superior Court of the District of Columbia; the claims were based almost entirely on state law; and, a jury trial in Superior Court was more accessible); *Terral v. SCH Management Solutions, Inc.*, 2004 WL 2115486, *4 (E.D. La. September 21, 2004) (among other factors, the issues of Louisiana corporate and securities law were found to "overwhelm" the case); *In re Merry-Go-Round Enters., Inc.*, 222 B.R. 254, 257, 259 (D. Md. 1998) (the bankruptcy judge found "that the causes of action and the defenses [were] primarily grounded in Maryland law, and that many of the questions involve[d] interpretation of Maryland law that would be best decided by the Maryland courts."); *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 408 (S.D.N.Y. 1991) (claims, involving insurance coverage and breach of contract, only related to the bankruptcy in that they might provide additional assets for the estate); *In re Asousa P'ship*, 264 B.R. 376, 391, 393-96 (Bankr. E.D. Pa. 2001) (claims required no consideration of bankruptcy law, and the court found that state law predominated over bankruptcy issues).

supporting the approach taken here.[16]

Seventh, there are no involuntarily-removed defendants in this case; to the extent Plaintiffs are prejudiced in any manner, that factor is considered more specifically in the factors above.

Ultimately, the factors do not indicate permissive remand or abstention is warranted here. Although the claims arise under state law, federal issues predominate the claims. The claims are inseparably intertwined with the bankruptcy case. A bankruptcy court can complete the pretrial matters in this case and, should the case continue to trial, the district court can withdraw the reference to the bankruptcy court and conduct a jury trial. Plaintiffs' motion for remand or abstention will be denied.

IV

TRANSFER OF VENUE

Squire Sanders seeks to have this matter transferred to the United States Bankruptcy Court for the District of Delaware ("the home court.") (DE No. 7.) Pursuant to 28 U.S.C.A. § 1412, "[a] district court may transfer a case or proceeding under title 11

---

[16] *See In re SPI Communications & Mktg., Inc.*, 112 B.R. 507, 512 (Bankr. N.D.N.Y. 1990) (court denied abstention for a jury-trial matter in a core proceeding, as here, but stated it would recommend abstention to the district court in the non-core proceeding. In the trustee's claims against the attorneys (the core matter), the court noted the claims involved "consideration of both substantive and procedural bankruptcy law. It defies logic that a court less acquainted with bankruptcy law will better address issues of alleged malpractice in a bankruptcy context than a bankruptcy court.").

to a district court for another district, in the interest of
justice or for the convenience of the parties." *See also* Federal
Rule of Bankruptcy 7087.   Due to the disjunctive, transfer of
venue is permissible where required in the interest of justice *or*
for the convenience of the parties.  *See In re Bruno's, Inc.*, 227
B.R. 311, 324 (N.D. Ala. 1998) (citing *In re Toxic Control
Techns., Inc.*, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988)).

A.

Interest of Justice

Squire Sanders argues transfer of venue to the home
court——the United States Bankruptcy Court for the District of
Delaware, exercising the jurisdiction under 28 U.S.C. § 1334 of
the District Court for that district——is warranted "in the
interest of justice."  (DE No. 7, pp. 5-9) (citing 28 U.S.C. §
1412).   In accordance with the following analysis, Squire
Sanders' motion for a transfer of venue to the United States
Bankruptcy Court for the District of Delaware will be granted.

Plaintiffs cite the following factors for consideration in
determining whether a transfer of venue to the District of
Delaware bankruptcy court is appropriate: (1) economics of estate
administration; (2) presumption in favor of the "home court";
(3) judicial efficiency; (4) ability to receive a fair trial;
(5) the state's interest in having local controversies decided
within its borders, by those familiar with its laws;

34

(6) enforceability of any judgment rendered; and (7) plaintiff's
original choice of forum. (DE No. 25, p. 9) (citing *Bruno's*, 227
B.R. at 324-25). These factors weigh as follows:

For the first two factors, the underlying primary concern is
"the economic and efficient administration of the estate." *See
Bruno's*, 227 B.R. at 326-27. Neither party has argued that the
finances of the bankruptcy estate will be affected by this
litigation; the reorganization plan has already been confirmed
and has been in effect for nearly eight years, having been almost
completely administered. (DE No. 25, p. 16.) Plaintiffs argue
transfer will delay final resolution of the estate, although
Plaintiffs provide no explanation of what hardships would occur
with such a delay or why the remaining portions of the estate
could not be wound up while this litigation was pending. (*See
id.*). However, because Plaintiffs likely have some interest in
the final resolution of the bankruptcy, these factors weigh in
favor of not transferring venue.

The third factor, and to some extent the second, addresses
judicial efficiency. This requires consideration of (a) benefits
derived from a court's familiarity with the facts, issues, and
substantive law of the case; and, (b) whether the time to
resolution or trial is shorter in one court. *See Bruno's*, 227
B.R. at 327.

35

Here, this factor weighs considerably in favor of
transferring the case to the home court due to the nature of
Plaintiffs' claims.  Initially, Plaintiffs' representation as to
the potential delays in securing a trial in the United States
District Court for the District of Delaware weighs in favor of
retaining jurisdiction.  (*See* DE No. 25, pp. 12-13.)  However,
the nature of Plaintiffs' claims are such that they are
inseparably woven into, not only bankruptcy law, but also the
actions of the bankruptcy court in Delaware.  As a result, the
first-hand experience of the home court tips this factor in favor
of transfer.  *See In re Steeley*, 243 B.R. 421, 441 (Bankr. N.D.
Ala. 1999) ("the entire court system and the litigants will
benefit" where a court familiar with the matter directs the
case).

Here, Plaintiffs allege that Squire Sanders was negligent in
drafting and finalizing a reorganization plan that did not comply
with bankruptcy law.  (*See* DE No. 6, Compl. ¶ 29.)  This court
could certainly review the reorganization plan to determine
whether it complied with bankruptcy law; however, that analysis
was already done when the bankruptcy court in Delaware confirmed
the plan.  Plaintiffs' allegation, by its nature, is a collateral
attack on the home court's decision to confirm the plan.  Unlike
this court, which has only the text of the reorganization plan
before it, the home court was privy to the confirmation process,

36

and is better situated to determine whether an error was made in confirming the plan and, if it was, whether Squire Sanders' part in it rose to the level of professional negligence.

Additionally, Plaintiffs argue that Squire Sanders was negligent in pursuing a litigation strategy to oppose the Spectrum Class Claim because such opposition was "based on Squire Sanders' erroneous application of the Bankruptcy Rules as well as misinterpretation of the provisions of the Plan of Reorganization." (*See* DE No. 6, Compl. ¶ 51.)  The home court held a hearing to consider the Spectrum Class's claim and Squire Sanders' opposition; held in favor of the Spectrum Class; and, again considered the issue on Squire Sanders' motion for reconsideration.  (*See id.*, ¶¶ 54, 56.)  Although this court could consider from the record whether Squire Sanders' opposition of this litigation was ill-advised and, if so, whether it rose to the level of professional negligence, the home court is better suited for this inquiry.  First, the home court presided over the hearings on the matter, and thus has first-hand knowledge of the case.  Second, the litigation was fundamentally based upon an interpretation of the reorganization plan, and thus the home court, having confirmed that plan, is more appropriately situated to determine whether Squire Sanders' interpretation of the plan

37

was so far in error as to constitute professional negligence.[17]
Third, the home court did not censure or otherwise warn Squire
Sanders that its arguments were frivolous at the time they were
made.  A failure to censure Squire Sanders at the time may not
have any bearing on the home court's view of the quality of
Squire Sanders' opposition; however, it is best left to the home
court, having presided over the proceedings, to make that
determination.  Fourth, Plaintiffs allege Squire Sanders was
negligent in failing to correct a mathematical error in the
calculation of damages.  (*See* DE No. 6, Compl. ¶ 57.)  Again,
this is a collateral attack on the home court's final
determination of damages, and should be addressed by the court
that issued that order.

Plaintiffs also argue Squire Sanders was negligent in
failing to adequately inform them of the risks of their various
litigation strategies.  (*See, e.g.,* DE No. 6, Compl. ¶ 31.)
Presumably, the home court has no knowledge of the content of
Squire Sanders' private communications with its clients, unless
those communications were later disclosed in a hearing or filing.
However, having first-hand knowledge of the progression of the

---

[17]  As a jurisdictional matter, the home court retains
jurisdiction to interpret the plan due to this expertise and to
ensure consistent interpretation of the plan.  *See Northwest
Airlines,* 2008 WL 630449, at *3; Second Amended Plan of
Reorganization, DE No. 7, Exhibit 4, Section 12.01(j), and p.
A-1.

bankruptcy case, the home court is better situated to determine

what advice the appropriate standard of care required in the

specific context of that bankruptcy case.   Furthermore, because

the extent of risk, error, or professional negligence found or

not found in Squire Sanders' conduct in the drafting of the

reorganization plan and in the opposition of the Spectrum Class

litigation also serves to inform a court as to the nature of the

warnings which should have been given to Plaintiffs, the home

court is best situated to address these intertwined inquiries as

a whole.

Ultimately, the home court is best suited to address claims

which involve questions of the appropriateness of professional

conduct committed before or in relation to the bankruptcy

proceedings, and which call into question the correctness of

documents and orders confirmed or issued by the home court.   Any

potential delay in conducting a trial caused by a transfer to the

home court is out-weighed by the above considerations.   Thus, the

third factor, based upon judicial efficiency and judicial

prudence, weighs heavily against this court's presiding over

litigation which so centrally and inseparably requires approval

or condemnation of the conduct surrounding a reorganization plan

confirmed in another court; interpretation of that plan;

evaluation of the appropriateness of litigation in that court;

and, the appropriateness of attorney conduct before that court,

where the attorney was appointed and paid with fees approved by
that court.[18]

The fourth factor deals with the parties' ability to receive
a fair trial. *See Bruno's*, 227 B.R. at 328. There is no
indication or allegation that a court or jury in the District of
Columbia or Delaware is more or less likely to favor one side
over the other. *See id.* This factor is not relevant here.[19]

_____

[18] Plaintiffs further argue that transfer to the Bankruptcy
Court for the District of Delaware will not result in any benefit
from that court's experience with this case, because the United
States District Court for the District of Delaware will
ultimately have to hear the case at trial. (DE No. 25, pp. 12-
13). Although the District Court in Delaware ultimately may
preside over the trial, the home court can still preside over the
pretrial process. The home court's first-hand experience will
still be beneficial in the pre-trial context; will expedite
considerations in the pre-trial process; and will increase the
likelihood of resolution of some or all of the issues before the
trial would be necessary. *See In re Commercial Fin. Servs.,
Inc.*, 239 B.R. 586, 596 (Bankr. N.D. Okla. 1999) ("Many district
courts have held that withdrawal of the reference on the ground
that a party is entitled to a jury trial should be deferred until
the case is 'trial ready.'") (citations omitted); *see also*, *In re
Reading Broad., Inc.*, 390 B.R. 532, 541 (Bankr. E.D. Pa. 2008)
(the district court directed the bankruptcy court to preside over
all pretrial matters despite a party's seeking a jury trial and
not consenting to the bankruptcy judge presiding over it).
    Plaintiffs additional argument, that the home court—as a
bankruptcy court hearing a matter only "related to" a case under
title 11—would be unable to issue a final order is moot, as
their claims "arise in" a case under title 11. Thus, 28 U.S.C.
§ 157(c) does not apply.

[19] Plaintiffs argue that their ability to receive any trial
will be delayed if this case is transferred to the District of
Delaware. (DE No. 25, pp. 12-13.) As discussed above, although
this is one component of judicial efficiency, it is outweighed by
the expertise possessed by the home court due to the underlying
basis of Plaintiffs' claims.

The fifth factor addresses "the state's interest in having local controversies decided within its borders, by those familiar with its laws." *Bruno's*, 227 B.R. at 328. Because Plaintiffs' motion for remand to the Superior Court of the District of Columbia is denied, the question here is whether this court or the home court should hear this matter. Here, the home court's experience in this case favors transfer. Although this court may possess some additional expertise in the handling of malpractice claims under the laws of the District of Columbia, the bankruptcy issues here predominate Plaintiffs' claims. These issues include several matters involving the home court's actions in and oversight of the bankruptcy case. Furthermore, the home court has considerable interest in regulating potential misconduct which occurred directly before it during the bankruptcy.[20] Thus, this factor weighs in favor of transfer.

The sixth factor does not appear to be applicable here; neither party has raised any issue indicating difficulties with enforcement of a judgment, regardless of where the litigation occurs. *See Bruno's*, 227 B.R. at 328.

---

[20] Plaintiffs argue their malpractice claims implicate common law and the District of Columbia Rules of Professional Conduct. (DE No. 25, p. 15). As previously explained, the claims here are predominated by bankruptcy issues; to the extent some District of Columbia laws or rules are applicable, the home court is fully capable of addressing them.

The seventh factor, a plaintiff's original choice of forum, has been viewed as a means to tip the balance against a transfer of venue, if the moving party has failed to satisfy his or her burden of proof, by preponderance of the evidence, that transfer is appropriate in the interest of justice, pursuant to 28 U.S.C. § 1412. *See Bruno's*, 227 B.R. at 328-29.

Here, Squire Sanders has satisfied its burden.  The analysis here is ultimately a balance of the advantages and prudence of transferring this case to the home court, which has first-hand knowledge of the case and confirmed or issued various documents and orders which are challenged here, with the speculative disadvantage of transfer should the District of Delaware be unable to provide a prompt trial date.  Whereas both considerations are significant, the weight of the latter is diminished because (a) the ultimate need for a trial is speculative, and (b) a trial in either this court or the home court will still result in delay due to the need to secure a trial date in the corresponding district court.  In contrast, the weight afforded to the home court's experience in this matter is a certainty, and will assist in the consideration of the issues. Furthermore, where Plaintiffs' claims challenge various actions of the home court, that court is best suited to reconsider those actions.  As such, Squire Sanders' motion for a transfer of venue on the grounds that it is in the interest of justice will be

granted.  (*See* DE No. 7.)

### B.

### Convenience of the Parties

Pursuant to 28 U.S.C. § 1412, transfer is appropriate when it is warranted either in the interest of justice *or* for the convenience of the parties.  *See Bruno's*, 227 B.R. at 324. Because one factor may weigh in favor of transfer while the other weighs against, a brief consideration of the "convenience of the parties" is warranted.[21]  Here, the "convenience of the parties" does not weigh significantly in favor of or against transfer to the District of Delaware.

Plaintiffs cite the following factors for consideration of whether the convenience of the parties warrants transfer: (1) location of the plaintiff and defendant; (2) ease of access to necessary proof; (3) convenience of witnesses; (4) availability of subpoena power for the unwilling witnesses; and (5) expense related to obtaining witnesses.  (DE No. 25, pp. 16-17) (citing *Frelin v. Oakwood Homes Corp.*, 292 B.R. 369, 388 (Bankr. E.D. Ark. 2003)).

The parties here address only the first two factors in any

---

[21]  Friction between "in the interests of justice" and "for the convenience of the parties" does not appear to be an issue that frequently arises.  *See, e.g., Blanton v. IMN Fin. Corp.*, 260 B.R. 257, 266 (M.D.N.C. 2001) (resolving the friction in favor of transfer "in the interests of justice").

significant detail; neither factor supports a transfer of venue
to Delaware, nor provides significant weight to favor the D.C.
venue.

First, both parties have reasonable access to either venue.
Squire Sanders has an office in the District of Columbia, and
there is no evidence of hardship were Squire Sanders to be
subject to litigation here.  Similarly, a Delaware venue would
not appear to create any significant hardship for Plaintiffs.
Plaintiff Kaiser Group Holdings, Inc. and Plaintiff Tennenbaum &
Co. LLC are both incorporated in Delaware, and indeed the
underlying bankruptcy case was filed in Delaware voluntarily by
plaintiff Kaiser Group International, Inc.  (DE No. 29, p. 16.)

Second, Squire Sanders asserts the bulk of the relevant
documentation is in storage in Squire Sanders' office in
Cleveland, Ohio (DE No. 29, p. 16) and the attorneys in Squire
Sanders' office who did the majority of the work in drafting the
reorganization plan and in litigating the Spectrum Class Claim
completed the work in the Cleveland, Ohio office (*id.*, p. 15).
As such, neither D.C. nor Delaware is so proximate to Cleveland,
Ohio to favor one venue based upon its proximity to the evidence.

V

Conclusion

Based upon the preceding analysis, a separate order follows,
denying Plaintiffs' motion (DE No. 23), and granting Squire

44

Sanders' motion for a change of venue to the United State

Bankruptcy Court for the District of Delaware (DE No. 7).

[Signed and dated above.]

Copies to:

All parties and counsel of record.